# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JEREMY JERWAYNE DOUGLASS,**          ) ) ) | |
| **Plaintiff,**          ) ) | Civil Action Number |
| vs.          ) ) | **5:16-cv-01826-AKK** |
| **COMMISSIONER, SOCIAL SECURITYADMINSTRATION,**          ) ) ) ) | |
| **Defendant.** | |

## MEMORANDUM OPINION

Jeremy Jerwayne Douglass brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

The administrative proceedings in this case stretch back to December 18, 2008, when an application for Supplemental Security Income (SSI) benefits was

filed on Douglass' behalf. Doc. 10 at 1–2.[1] The application alleged that Douglass became disabled on November 12, 2008 because of multiple mental and physical impairments suffered as a result of a serious car accident. *Id.*; (R. 438). After review, the claim was allowed based on Douglass' history of chronic asthma and a closed head injury he received in the accident. Doc. 10 at 2–3.

Douglass turned 18 in August 2010, and approximately a year later he was informed that, as an adult, he was no longer considered disabled. Doc. 10 at 2; (R. 126–27). Accordingly, his benefits were scheduled to terminate in October 2011, and on August 31, 2011 Douglass requested reconsideration of that decision. Doc. 10 at 2. The initial reconsideration process culminated in a hearing before an ALJ on July 25, 2013. *Id.* Douglass was unrepresented at that hearing, which was continued so that he could obtain representation. (R. 116). Finally, on January 17, 2014, a full hearing was conducted, after which the ALJ entered a decision extending disability benefits through May 1, 2012 to account for a lengthy period of hospitalization Douglass underwent after developing empyema in his left lung. (R. 134, 136, 143–44). From that point forward, however, the ALJ determined that Douglass was no longer disabled. (R. 144).

Douglass appealed, and on August 24, 2015 the SSA Appeals Council (AC) reversed the ALJ, finding that she had not adequately addressed Douglass' claim of

---

[1] Douglass was a minor at the time he initially applied for and began receiving SSI benefits. Doc. 10 at 1–2.

mental impairment and that she had insufficiently considered the non-examining medical source opinions when determining Douglass' Residual Functional Capacity (RFC). (R. 150, 152–54). Pursuant to this conclusion, the AC remanded the case to the ALJ for reevaluation. (R. 150, 154).

Following another hearing, the ALJ issued a second decision on April 7, 2016. Doc. 11 at 2. The ALJ again denied Douglass' claim finding that his RFC allowed for a variety of light work following May 1, 2012, and that accordingly Douglass was not disabled after that date. Doc. 10 at 4. Douglass appealed the ruling, and the AC issued a form denial on September 7, 2016. *Id.* Having exhausted his administrative remedies, Douglass filed this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) on November 11, 2016. Docs. 1 at 1; 11 at 2.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

## III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act proceeds via a required five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that she is disabled, and, "consequently [s]he is responsible for producing evidence in support of he[r] claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## IV. The ALJ's Decision

As an initial matter, the ALJ properly determined that this case involved an age 18 redetermination of SSI disability benefits. Accordingly, the definition of disability used to evaluate an adult's initial application for disability benefits applies. *See* 42 U.S.C. § 1382c (a)(3)(H)(iii)); (R. 22–23). While age 18 redetermination cases generally utilize the familiar five-step evaluation process for finding disability, the initial step of the process, determining whether the individual is unemployed, is omitted. *See* 20 C.F.R. § 416.987(b). Accordingly, the ALJ correctly proceeded directly to Step Two of the review process finding that Douglass' asserted bases for disability including "asthma; left lower lobe empyema . . . in February 2012 followed by IV antibiotic therapy; a history of a motor vehicle accident in 2009 with a closed head injury; right femur fracture, and

bladder and colon perforations requiring surgical repair; a cognitive disorder, not otherwise specified; and an anxiety disorder, not otherwise specified," met the necessary severity requirement. (R. 23, 25). The ALJ proceeded to Step Three and found that none of the listed impairments, singly or in combination, met or "medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 25–28). Despite answering Step Three in the negative, however, the ALJ correctly applied Step Four of the disability analysis, *see McDaniel*, 800 F.2d at 1030, and concluded that

> [A]s of May 2, 2012 and continuing through the date of this decision, [Douglass] has had the [RFC] to perform light work as defined in 20 CFR § 416.967(b) except he can occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry ten pounds. He can stand and/or walk in combination, with normal breaks, for at least six hours during an eight hour workday. [Douglass] can sit, with normal breaks, for up to 8 hours during an 8 hour workday. [Douglass] can occasionally climb ramps and stairs and should never climb ladders, ropes or scaffolds. He can frequently balance, and occasionally stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and working in areas of vibrations. [Douglass] should avoid concentrated exposure to pulmonary irritants including fumes, dusts, odors, gases and areas of poor ventilation. He should avoid all exposure to industrial hazards including working at unprotected heights and working in close proximity to moving dangerous machinery. He can perform simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few workplace changes. He can have occasional interactions with co-workers and supervisors and no interactions with members of the general public.

(R. 29).

In light of Douglass' RFC and lack of any previous work experience, the ALJ proceeded to Step Five of the disability analysis. (R. 33–34). Relying on the testimony of a vocational expert (VE), and taking into consideration Douglass' age, education, RFC, and work experience, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 34). Based on this negative answer to Step Five, the ALJ concluded that Douglass was no longer disabled as of May 2, 2012, and that he had not become disabled again since that date. (R. 34–35).

## V. Analysis

On appeal, Douglass raises two main arguments. First, Douglass argues that the ALJ did not base her findings on substantial evidence because she failed to adequately develop the record to substantiate her decision to deny benefits. Second, Douglass contends the ALJ's RFC determination was not supported by substantial evidence because insufficient weight was accorded to the opinions of a treating physician, Alan McCrory, M.D., and a consultative psychologist, Thomas Tenbrunsel, Ph.D. Douglass also suggests that the ALJ did not appropriately address the concerns the AC expressed regarding the initial RFC determination in

2014, and instead improperly issued a virtually identical decision on remand. This court addresses each of Douglass' contentions in turn.[2]

The primary thrust of Douglass' argument is that almost all of the evidence in the expanded record before the ALJ at the remand hearing in December 2015 involved the period prior to May 2012. Since that date, only sporadic medical records were present, and no medical evidence at all was presented in the six months prior to the December 2015 hearing. Douglass argues that he was unable to afford additional medical coverage because he had been without benefits and health insurance for nearly two years following the ALJ's initial ruling in 2014. (R. 51). Given the sparse evidence, the addition of new severe impairment findings, and Douglass' alleged inability to afford comprehensive medical treatment, he argues the ALJ should have ordered a consultative examination ("CE") pursuant to 20 C.F.R. § 416.919a(b).

Douglass is correct to argue that "the ALJ has a basic duty to develop a full and fair record." *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(d)).[3]

---

[2] Douglass has not raised any other bases for this appeal and, therefore, has waived other grounds upon which he might challenge the ALJ's decision. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (claimant waived an issue because he did not elaborate on the claim or provide citation to authority regarding the claim); *NLRB. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.")

[3] The ALJ is specifically obligated to develop a medical record for "'the 12 months preceding the month in which [the claimant] file[d] [his or her] application.'" *Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 879 (11th Cir. 2012) (quoting 20 C.F.R. § 416.912(b)). Here, Douglass does not argue that the ALJ failed to meet this basic responsibility. And, Eleventh Circuit case law

9

However, this basic obligation ripens into a special duty only when dealing with "'an unrepresented claimant.'" *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981)). Douglass was represented at his hearing before the ALJ and he does not challenge the adequacy or qualifications of his representative. *See Ellison*, 355 F.3d at 1276–77 (explaining that a represented plaintiff needs to challenge the adequacy of his representation to justify relief based on an ALJ's failure to fully develop the record). Accordingly, the ALJ was under no heightened obligation to fully develop the record here. Moreover, Douglass' representative indicated that the medical record was complete during the hearing on remand, (R. 48), and Douglass has otherwise failed to identify any outstanding or new medical information that was not presented to the ALJ. To the extent that evidentiary gaps exist in the record, those gaps are a product of the nonexistence of evidence rather than of the ALJ's failure to adequately develop the record.[4]

---

makes clear that the ALJ's independent duty to develop the record does not extend beyond that period, at least in the case of a represented claimant. *Id.*

[4] The law in this circuit clearly indicates that even if a complete record was not developed there must be a showing "of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further [evidentiary] development." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). To the extent evidentiary gaps existed before the ALJ, the court notes that Douglass retains the primary responsibility of proving the existence of a disability. *See* 20 C.F.R. § 416.912(a). On this record, Douglass, a represented claimant, failed to carry his burden of filling in those gaps, and, as will be discussed *infra*, the ALJ's decision to deny benefits was supported by substantial evidence. Accordingly, Douglass cannot show the requisite prejudice necessary for him to secure a remand on the ground that the record was incomplete or inadequate. *See, e.g.*, *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (upholding the denial of benefits when an

Even in the absence of a special duty to develop the record, Douglass contends that the ALJ still should have ordered an additional CE pursuant to 20 C.F.R. § 416.919a(b) in order to flesh out the lengthy treatment gaps in his medical history and to better understand the implications of the additional severe impairments the ALJ listed at Step Two of the disability analysis. However, an ALJ "is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision." *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (quoting *Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir. 1981)). Put another way, a CE is "normally require[d]" only when "necessary information is not in the record and cannot be obtained from . . . other medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *see also* 20 C.F.R. § 416.919a(b).

Here, Douglass has presented no evidence indicating any necessary medical information was lacking from the record. Moreover, as discussed *infra*, substantial evidence supports the ALJ's decision to deny benefits in this case. Accordingly, the ALJ did not err in failing to secure a CE to address evidentiary gaps in the record, and a remand to further develop the medical record is unnecessary. *See Doughty*, 245 F.3d at 1281 (finding that the existence of sufficient evidence in the

---

unrepresented claimant had shown no prejudice and made no allegations "that the record . . . as a whole was incomplete or inadequate").

record to support the ALJ's conclusion obviated the need for a CE); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (finding no obligation to seek additional medical testimony when "the record . . . was sufficient for a decision").[5]

More generally, Douglass argues that the ALJ's decision was not based on substantial evidence because insufficient weight was accorded to the opinion of Dr. McCrory, a treating physician, the opinion of Dr. Tenbrunsel, a consultative psychologist, was discounted, and because the ALJ failed to adequately consider the record as a whole. The court disagrees and finds that both the weight the ALJ accorded to the medical testimony in the case, and the ALJ's overall disability determination, were supported by substantial evidence.[6]

---

[5] Douglass further argues a CE was necessary because his lack of SSI benefits and health insurance prevented him from obtaining treatment after his benefits were not properly reinstated following the AC's initial ruling. Doc. 10 at 13. However, the record shows that during the time period Douglass purportedly lacked the financial wherewithal to afford a doctor he still occasionally received medical treatment related to his asthma, which the ALJ took into account. (R. 29, 31–32). Further, as the ALJ indicated, Douglass did not seek treatment for abdominal pain, diarrhea, or pain or weakness in his right leg between August 2009 and November 2011, before his benefits were terminated. (R. 30–32). There is simply no basis for concluding that the termination of benefits in 2014, and the subsequent failure to reinstate those benefits following the AC's initial decision, prevented Douglass from adequately developing his medical record such that the ALJ was required to order a CE before rendering a decision on remand. Nor does the record reveal that the ALJ improperly based her opinion on Douglass' non-compliance or failure to seek treatment without consideration of alternative explanations for that failure, such as poverty, as evidenced by the ALJ's reference to the failure to seek treatment when Douglass was still receiving benefits. *See* (R. 31); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012). In any event, even if the ALJ had used Douglass' purported failure to seek treatment as a reason to deny benefits, this error is not reversible because it "was not a significant basis for the ALJ's [decision]." *Beegle*, 482 F. App'x at 487.

[6] In light of this decision, Douglass' argument that the ALJ failed to properly address the AC's concerns with his initial RFC determination is a non-starter. The ALJ, as directed, fully evaluated Douglass' mental impairments, and provided further consideration to Douglass' RFC in light of the expanded record and the State Agency's mental RFC assessment. (R. 25–28).

When dealing with medical opinions, the ALJ must "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Typically, absent good cause, a treating physician's opinion must be given substantial or considerable weight. *Id.* Good cause for discounting a treating physician's opinon exists "'when the: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). On the other hand, the ALJ need not defer to one-time examiners who do not qualify as treating physicians. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). In the final analysis, the RFC determination is reserved to the ALJ and she may freely "reject the opinion of any physician if the evidence supports a contrary conclusion." *Beegle v. Soc. Sec. Admin. Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Here, Douglass does not seriously contend that the ALJ failed to state with particularity the weight she accorded various medical opinions in the case. Instead, he takes issue with the ALJ's decision to give only selective weight to the

---

Moreover, the AC reviewed the decision challenged here and upheld it. (R. 1). Douglass has made no showing that the ALJ either failed to comply with the AC's instructions on remand, or otherwise rendered a decision unsupported by the facts and the law.

opinion of Dr. McCrory, a treating physician. The ALJ accorded substantial weight to the portion of Dr. McCrory's opinion finding that Douglass could perform a range of light work with certain environmental restrictions, and she discounted the portion of the opinion finding that Douglass would need additional breaks and suffer two to three incapacitating asthma attacks per year. (R. 32).

The record reflects that the ALJ had "good cause" for discounting that portion of Dr. McCrory's opinion because, as the ALJ explained, the evidence supported a contrary finding. (R. 32–33). First, the ALJ noted that Dr. McCrory had not seen Douglass in almost two and a half years, and so his non-contemporaneous assessment did not reflect Douglass' current medical prognosis. (R. 32). Second, and more importantly, the ALJ explained that since May 1, 2012, Douglass only received asthma related medical treatment twice. (R. 32). This amount of treatment is plainly inconsistent with Dr. McCrory's opinion that Douglass could expect to suffer two to three incapacitating asthma attacks each year. (R. 32).

Furthermore, substantial evidence in the record offers additional support for the conclusion that Douglass' asthma was well controlled, and that the ALJ's decision to discount Dr. McCrory's opinion was justified. Among other things, Dr. McCrory himself indicated that Douglass' asthma was well controlled by medication, two other physicians who examined Douglass, or his medical records,

in 2011, around the same time as Dr. McCrory, found that Douglass' asthma was well controlled, and a third doctor, who treated Douglass when he was hospitalized in February and March 2012 with empyema in his left lung, found that Douglass was doing well "without any shortness of breath" in his follow-up examinations. (R. 29, 32–33, 487). Douglass has provided no medical evidence to show that he is in fact more limited than the ALJ's findings reflected. To the contrary, Douglass has indicated that he is able to do house and yardwork, play basketball once a week, and maintain an exercise regimen. (R. 27). This additional record evidence is inconsistent with Dr. McCrory's findings regarding the severity of Douglass' asthma and further supports the ALJ's decision to discount that portion of Dr. McCrory's testimony.

Similarly, the ALJ properly identified the weight she assigned to the opinion of Dr. Tenbrunsel—a consultative examiner that the ALJ need not defer to. *See* (R. 26–28); *McSwain*, 814 F.2d at 619. The ALJ extensively discussed Dr. Tenbrunsel's opinon regarding the severity of Douglass' asserted cognitive impairments, namely that they were severe enough to totally prevent Douglass from performing substantial gainful activity, and provided reasons for not according that opinion substantial weight. (R. 27–28). The ALJ noted that Douglass is able to care for his two year old son, manage his money, assist with work around the house and yard, and does not otherwise exhibit severe adaptive

15

deficiencies. *Id.* Additionally, the ALJ pointed out that a different psychologist, Dr. Jon Rogers, who had examined Douglass during his initial application for SSI benefits, indicated that Douglass suffered from only moderate cognitive impairment. (R. 25–26, 28). A psychiatrist, Dr. Samuel Williams, who reviewed Douglass' records during the redetermination process, confirmed that opinion. (R. 28). Again, Douglass fails to indicate any evidence that suggests that Dr. Tenbrunsel's opinion was improperly discounted, or that Douglass' true level of impairment is much greater than what the ALJ determined.

The record evidence as a whole offers further support for the ALJ's determination that, as of May 2, 2012, Douglass was no longer disabled. As discussed, two psychologists provided evidence that Douglass was of normal intelligence and had only moderate cognitive deficiencies, and the record shows Douglass maintained an active personal life and was able to perform routine household tasks without difficulty. (R. 25–28). Medical evidence from three physicians showed that, although Douglass suffers from asthma, it is well controlled with medication, (R. 32–33), and it evidently does not prevent him from playing basketball weekly and maintaining a workout regimen. (R. 27). Indeed, after March 2011, Douglass did not seek treatment for his asthma until April 2014, a lengthy gap that is inconsistent with an incapacitating condition. (R. 29). Tellingly, in his most recent hearing before the ALJ, Douglass primarily relied on

his abdominal difficulties and frequent use of the bathroom rather than asthma to qualify for disability. (R. 50, 54). However, the medical record simply contains no indication of a severe and persistent abdominal condition and, since 2009, Douglass has not reported receiving any treatment for abdominal complaints. (R. 29–31). To the extent that any stomach problems presented themselves, Douglass' medical records indicate that his treating physicians thought they were minor and expected them to clear up without further treatment. (R. 31).

In short, the record indicates that the ALJ made a reasonable decision based on substantial evidence, and Douglass points to no legal errors in that determination. Instead, Douglass argues that the ALJ failed to fully and fairly develop the record and then used the lack of record medical evidence to justify discounting the severity of Douglass' medical condition. However, Douglass, as the claimant, bears the ultimate burden of putting forward evidence to support his claim, and he does not contend that any relevant medical information was missing at the time of the ALJ's decision. Nor does he seriously allege that the ALJ's decision is not supported by the record as it stands now. While Douglass suggests additional medical examinations may have resulted in a different determination, this argument amounts to pure speculation and is insufficient to create a duty on the part of the ALJ to expand the record. In the end, the ALJ need not make a perfect decision, only a reasoned one based on substantial evidence. *See, e.g.*,

*Phillips*, 357 F.3d at 1240 n.8 (holding that "'[the court] may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]'") (quoting *Bloodsworth*, 703 F.2d at 1239). This court finds that the Commissioner has carried that burden here.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Douglass is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching her decision. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 16th day of October, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE